2024 IL App (1st) 232166-U

No. 1-23-2166B

Third Division
February 2, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
|  | ) |  |
|     Plaintiff-Appellee, | ) |  |
|  | ) | Nos.   19 CR 1501301 |
| v. | ) |         20 CR 0610201 |
|  | ) |  |
| KENNETH TATE, | ) | The Honorable |
|  | ) | Alfredo Maldonado, |
|     Defendant-Appellant. | ) | Judge Presiding. |
|  | ) |  |

---

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices D.B. Walker and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court's pretrial detention orders are affirmed, where (1) the State had the authority to file pretrial detention petitions after the defendant was returned to county custody after serving a sentence in the Illinois Department of Corrections and (2) the State's evidence supported the granting of the petitions.

¶ 2    Defendant Kenneth Tate appeals from the circuit court's orders detaining him before trial, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). On appeal, defendant contends (1) that

the State lacked the authority to file the pretrial detention petitions and (2) that the State failed to establish that pretrial detention was appropriate. For the reasons that follow, we affirm the circuit court's orders.

¶ 3                                                    BACKGROUND

¶ 4        In 2019, defendant was charged in case No. 19 CR 1501301 with 23 offenses, including 1 count of attempted murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2018)), 15 counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2)-(4) (West 2018)), 6 counts of aggravated kidnaping (720 ILCS 5/10-2(a)(3) (West 2018)), and 1 count of aggravated battery (720 ILCS 5/12-3.05(a)(5) (West 2018)). Case No. 19 CR 1501301 was based on an October 27, 2018, incident in which defendant allegedly forcibly sexually penetrated the victim both orally and vaginally.

¶ 5        In 2020, defendant was charged in case No. 20 CR 0610201 with 16 offenses, including 1 count of attempted murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2018)), 10 counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2)-(4) (West 2018)), 3 counts of aggravated kidnaping (720 ILCS 5/10-2(a)(3) (West 2018)), and 2 counts of aggravated battery (720 ILCS 5/12-3.05(a)(5), (c) (West 2018)). Case No. 20 CR 0610201 was based on a September 24, 2017, incident in which defendant similarly allegedly forcibly sexually penetrated the victim both orally and vaginally.

¶ 6        The criminal disposition sheet contained in the record on appeal for both cases indicates that a D-Bond was set in the amount of $1 million, but no information as to the bond hearing appears in the record on appeal. According to defendant's counsel, defendant was never

released pursuant to the D-Bond and, at the time of the pretrial detention hearing at issue on appeal, "has been in custody now over 5 years."[1]

¶ 7    In addition to the two cases at issue on appeal, defendant was also charged, and convicted, in case No. 19 CR 0084301, which appears to have involved a jury trial in which defendant was acquitted of certain sexual offenses but was convicted of aggravated battery based on strangulation and sentenced to five years in the Illinois Department of Corrections. Based on the record on appeal, it appears that case also concerned allegations that defendant had sexually assaulted a woman, and one of the victims in defendant's current cases testified as an other-crimes witness during that trial. According to the Illinois Department of Corrections website, defendant was paroled on that case on October 26, 2023,[2] and defense counsel indicated during the pretrial detention hearing that defendant "has been released on parole so he's no longer serving any sentence."

¶ 8    On November 1, 2023, the State filed petitions for pretrial detention in both case No. 19 CR 1501301 and case No. 20 CR 0610201, and the matter came before the circuit court for hearing on those petitions, as well as defendant's motion to reconsider his sentence in case No. 19 CR 0084301, on the same day. The circuit court considered defendant's motion to reconsider his sentence first, and denied the motion. The parties then proceeded to the matter of the petitions for pretrial detention; defendant's counsel raised no objections to the timing of either petition.

---

[1] The Cook County Sheriff's Office "Individual in Custody" website, relied on by both parties, indicates that defendant's "Booking Date" was December 21, 2018, although it does not specify the offense for which defendant was arrested. See https://iic.ccsheriff.org/IndividualInCustodyLocator/Search (last accessed Jan. 29, 2024).

[2] The Illinois Department of Corrections "Individual in Custody Search" indicates that defendant's "custody date" for case No. 19 CR 0084301 was December 6, 2018, that his "Admission Date" to the Illinois Department of Corrections was October 26, 2013, and that his "Parole Date" was the same day. See https://idoc.illinois.gov/offender/inmatesearch.html (last accessed Jan. 30, 2024).

¶ 9    The State's proffer with respect to case No. 20 CR 0610201 was based on the victim's testimony at the earlier trial in case No. 19 CR 0084301, a trial which was presided over by the same judge as in the pretrial detention proceedings. According to the State, J.G. was celebrating her birthday with friends downtown, which involved visiting a number of bars and restaurants; by the time she was preparing to return home, it was the early morning hours and she was intoxicated. J.G. attempted to order a ride through a ride-share service, and walked outside while doing so. In walking outside, J.G. left the more-populous area where she had been, and entered a more secluded area. Defendant, who the State claimed had been watching her, approached J.G. from behind; when J.G. became aware of defendant's presence, she felt threatened and began moving away from him. Defendant then placed his hands on her shoulder and hair and told her that she was "going to have sex with [him] whether you like it or not." J.G. pleaded with defendant to leave her alone, but he refused, shoving her against a wall in an even more secluded area, then forcing her onto her knees. Defendant placed both hands around her neck and choked her to the point where she could not breathe, threatening her all the while. Defendant punched her in the head, then forced her to perform oral sex, while he kept his hands wrapped around her neck, choking her. J.G. attempted to escape, but defendant punched her in the head again, causing her to feel as though she would lose consciousness. Defendant then forced her onto the ground and forced his penis into her vagina, after which he left. J.G. eventually flagged down passerby for assistance, ultimately being treated by an ambulance and taken to the hospital. J.G. had a scratched and bruised neck, bruising on her face and eye, bruising on her legs, and a fractured foot. Defendant's DNA was also found inside her mouth, and J.G. was able to identify defendant in a photo array.

¶ 10        With respect to case No. 19 CR 1501301, the State's proffer established that M.A.F.[3] was at a Halloween party at which defendant was also present; the two did not know each other. The police arrived due to a noise complaint, and people began dispersing. Defendant approached M.A.F., who was intoxicated, and suggested that she come with him to wait until the police left. Defendant led M.A.F. to an alley, where he opened his pants, began masturbating, and ordered her to perform oral sex on him. M.A.F. attempted to leave, and defendant threatened to kill her if she did not comply. When she attempted to run, defendant grabbed her, placed both hands around her neck, and strangled her to the point where she was unable to breathe while threatening to leave her in the alley to die. When he released her, he forced his penis into her mouth. Afterwards, he took her to a more secluded area, forced her to remove her clothes, and forced his penis into her vagina before leaving. M.A.F. was able to order a ride through a ride-sharing service and made an outcry, whereupon she was taken to the hospital. M.A.F. had red marks on her neck, bites and bruising on her breasts, redness on her knees, and abrasions on her back. Defendant's DNA was found on her arm and shin, as well as in her mouth, and she was able to identify defendant in a photo array.

¶ 11        As part of its proffer, the State also emphasized that defendant had recently been convicted of aggravated battery based on strangulation in a case which had "very similar facts" to the cases at issue, "[s]o these are three women that the defendant has[,] in the State's opinion[,] targeted and then assaulted." The State argued that defendant was "a huge risk to women" in the community and that there were no conditions which could mitigate that risk.

¶ 12        In mitigation, defense counsel argued that, with respect to M.A.F., the defense's position was that she approached defendant and initiated contact with him, so the State was unlikely to

_____

[3] The record indicates that M.A.F. did not testify at the other trial.

prevail in that case. With respect to J.G., defense counsel argued that her testimony at the other trial was impeached, so it was unlikely that the State would prevail in that case, either. Defense counsel further argued that defendant was "not a threat" and had been in custody for over five years without incident. Defense counsel noted that "[h]e has been released on parole so he's no longer serving any sentence," and claimed that, apart from his recent aggravated battery conviction, "he really has very minimal criminal history." Accordingly, counsel requested that defendant be released with conditions such as electronic monitoring or home confinement.

¶ 13    The circuit court entered an order in each case, granting the State's petitions for pretrial detention. In each case, the circuit court found that the State had shown, by clear and convincing evidence, (1) that the proof was evident or the presumption was great that defendant had committed aggravated criminal sexual assault, a detainable offense under section 110-6.1(a) of the Code; (2) that defendant posed a real and present threat to the safety of any person or persons or the community, based on the allegations of sexual violence on the public way with predatory behavior; and (3) no conditions mitigated the real and present threat to the safety of any person or persons or the community, due to defendant's predatory violence against women with severe infliction of harm. As part of its oral findings, the circuit court noted that it did not need to rely solely on the State's proffer with respect to the case involving J.G., as the circuit court had actually had the opportunity to hear her testify during the other trial and did not believe that she was impeached in the manner suggested by the defense.

¶ 14    In both cases, the circuit court ordered defendant to be detained and remanded to the custody of the Cook County sheriff pending trial. Defendant filed a notice of appeal challenging both orders, and this appeal follows.

¶ 15                                    ANALYSIS

¶ 16        On appeal, defendant contends (1) that the State lacked the authority to file the pretrial detention petitions and (2) that the State failed to establish that pretrial detention was appropriate. We consider each argument in turn.

¶ 17                            *Authority to File Petition*

¶ 18        Defendant first argues that the State lacked the authority to file petitions for pretrial detention in cases No. 19 CR 1501301 and 20 CR 0610201, as bond had previously been set for these offenses. In passing the Act, the legislature recognized that there would be defendants who had been arrested prior to its effective date, and separated such defendants into three categories: (1) defendants who had been released subject to pretrial conditions prior to the effective date of the Act, (2) defendants who remained in pretrial detention after being ordered released subject to pretrial conditions, and (3) defendants who remained in pretrial detention without the ability for pretrial release. See 725 ILCS 5/110-7.5 (West 2022).

¶ 19        With respect to defendants in the second category, the Act provides that "[o]n or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." *Id.* § 110-7.5(b). Section 110-5(e), in turn, provides that, where a defendant remains in pretrial detention 48 hours after being ordered released with pretrial conditions, "the court shall hold a hearing to determine the reason for continued detention" and, where applicable, "shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(e).

¶ 20    Defendant contends that, as he was ordered released subject to a D-Bond, he was entitled to a hearing under section 110-5(e) and the State was not permitted to file a petition for pretrial detention. Defendant further contends that, even if the State was permitted to file such a petition, its petitions in the instant case were untimely. Defendant's arguments, however, fail to accurately describe the proceedings below.

¶ 21    The record establishes that defendant was charged in three separate cases: case No. 19 CR 0084301, case No. 19 CR 1501301, and case No. 20 CR 0610201. According to the Cook County Sheriff's Office, defendant was arrested in December 2018, although it is unclear for which offense, and a D-Bond in the amount of $1 million was eventually set; there appears to be no dispute that defendant was never released pursuant to this bond. During the time defendant was in custody, he was tried and convicted in case No. 19 CR 0084301, and was sentenced to five years in the Illinois Department of Corrections. Defendant was presumably given credit for the time he spent in pretrial custody, as the Illinois Department of Corrections website indicates that defendant was admitted into its custody and released on parole the same day, namely, October 26, 2023. The record does not indicate whether there were any court proceedings between that date and the November 1, 2023, hearing on the State's pretrial detention petitions, but there appears to be no dispute that defendant was returned to the custody of the Cook County Sheriff's Office after he was released on parole.

¶ 22    In this case, then, the issue is *not* whether the State may file a pretrial detention petition for a defendant who remains in custody despite being eligible for release based on pretrial conditions. Instead, the issue is whether the State may file a pretrial detention petition for a defendant who has been *returned* to the sheriff's custody after serving a sentence for a conviction in the Illinois Department of Corrections. We find that it may.

¶ 23    Section 110-7.5(b), which is defendant's source of statutory support for his claims, does not apply to this situation. By its own terms, section 110-7.5(b) applies to "any person who remains in pretrial detention after having been ordered released with pretrial conditions." 725 ILCS 5/110-7.5(b) (West 2022). Defendant, however, did not "remain" in pretrial detention; the term suggests a continuous presence in pretrial detention. See, *e.g.*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/English/remain ("remain" means "to stay in the same place or in the same condition"); Merriam-Webster, https://www.merriam-webster.com/dictionary/remain (definitions of "remain" include "to stay in the same place or with the same person or group" and "to continue unchanged"). Instead, defendant was transferred to the custody of the Illinois Department of Corrections after his conviction, then returned to the custody of the sheriff's office after his parole. Thus, we cannot find that defendant falls within the purview of section 110-7.5(b).

¶ 24    Furthermore, defendant cites no authority suggesting that he was automatically entitled to the same $1 million bond upon being returned to the sheriff's custody after serving his sentence. Indeed, such a result would make little sense—defendant is no longer facing charges in three cases in which he is presumed innocent, as was the case at the time of the original imposition of the bond, but now has a conviction which did not exist at that time. To the extent that his previous pretrial conditions remained in place when he returned to the custody of the sheriff's office, the circuit court had the authority to modify previously-imposed conditions of pretrial release, either after a motion filed by either party or on its own motion. 725 ILCS 5/110-6(g) (West 2022). Here, where there has been a change in the factual circumstances underlying the original imposition of bond, such a modification would be likely and appropriate. Several courts have found that a request to modify the conditions of release may

take the form of a pretrial detention petition under section 110-6.1, a position which is supported by the language of both sections 110-6 and 110-6.1. See *People v. O'Neal*, 2024 IL App (5th) 231111, ¶¶ 17-19 (finding that the State's detention petition was an exercise of its right to request modification of the original conditions of pretrial release under section 110-6(g)); *People v. Carter*, 2024 IL App (5th) 230977-U, ¶¶ 20-22 (same). See also 725 ILCS 5/110-6(i) (West 2022) (providing that "[n]othing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release" under section 110-6.1); *id.* ¶ 110-6.1(c)(1) (a pretrial detention petition may be filed "within the 21 calendar days, *except as provided in Section 110-6*, after arrest and release of the defendant upon reasonable notice to defendant" (emphasis added)). In this case, where the State filed pretrial detention petitions only a few days after defendant returned to county custody, it is apparent that the State's petitions were filed pursuant to its right to request modification of the conditions of release.[4] We therefore find no merit to defendant's contention that the State lacked the authority to file its petitions, and proceed to consider their merits.

¶ 25                                    *Circuit Court Findings*

¶ 26          As noted, in addition to challenging the State's authority to file the instant petitions, defendant also contends that the factual circumstances did not warrant pretrial detention. The Act provides that a defendant may be denied pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption is great that defendant has committed a qualifying detainable offense, (2) defendant poses a real and present threat to the

---

[4] While the record is not entirely clear on this point, we also note that the short span of time between defendant's parole date and the detention hearing suggests that the State's petitions may have been filed at the defendant's "first appearance before a judge" after being returned to county custody following his conviction, providing further support for the State's ability to file the petitions. See 725 ILCS 5/110-6.1(c)(1) (West 2022) (providing that the State may file a pretrial detention petition "at the first appearance before a judge").

safety of any person or persons or of the community, and (3) no condition or combination of conditions can mitigate the threat to safety of any person or persons or of the community. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 27    On appeal, defendant does not dispute that aggravated criminal sexual assault, the offense listed in both petitions, is a detainable offense under section 110-6.1(a) of the Code. See *id.* § 110-6.1(a)(1.5) (listing aggravated criminal sexual assault as a detainable offense). Defendant, however, claims that the State failed to establish that proof was evident that he had committed the offenses or that he posed a real and present threat to the community, as J.G.'s testimony was impeached during the previous trial and she was not a credible witness. Defendant also contends that the circuit court erred in determining that there were no conditions which would mitigate any threat to the safety of the community, as defendant's criminal record contained only one aggravated battery conviction.

¶ 28    In reviewing a circuit court's determination on pretrial release, courts have applied varying standards of review, with some courts finding that the decision should not be reversed absent an abuse of discretion, other courts finding the manifest-weight-of-the-evidence standard appropriate, and yet others applying a bifurcated standard of review in which the circuit court's factual findings are reviewed under a manifest-weight-of-the-evidence standard and its ultimate determination as to pretrial release is reviewed for an abuse of discretion. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 44 (explaining different approaches). In this case, the circuit court's determination was appropriate regardless of the standard applied.

¶ 29    With respect to defendant's first argument, we note that defendant challenges only the credibility of J.G., the victim in case No. 20 CR 0610201, and does not challenge the evidence with respect to case No. 19 CR 1501301, involving victim M.A.F. Additionally, defendant's

arguments concerning J.G.'s credibility were raised before the circuit court and expressly rejected by that court. In its oral findings, the circuit court noted that it had the opportunity to observe J.G.'s testimony during the prior trial, as the same judge presided over both matters, and found that "I don't think she was impeached in the manner that the Defense suggests. I think her testimony was quite clear and I think the State has certainly met its burden as to [case No.] 20 CR 0610201 that the proof is evident." Thus, based on the evidence presented by the State, we agree with the circuit court's conclusion that the State had established that proof was evident that he had committed the offenses alleged in both petitions.

¶ 30     We similarly agree with the circuit court's conclusion as to the inadequacy of any other conditions to mitigate the risk to the community. Defendant contends that the circuit court's finding that defendant's "predatory violence against women with severe infliction of harm" required his pretrial detention was inappropriate, as defendant only had one felony aggravated battery conviction. Defendant overlooks the fact, however, that defendant's conviction and the pending charges were all based on a remarkably similar sequence of events, which the circuit court characterized as "[defendant] allegedly being a predator and snatching women off the streets of Chicago for sexual gratification." We therefore find that the circuit court's finding that defendant had a history of "predatory violence against women with severe infliction of harm" was entirely accurate and supported a determination that there were no conditions which could mitigate the risk to the community. Accordingly, we affirm the circuit court's orders granting the State's petitions for pretrial detention.

¶ 31                                    CONCLUSION

¶ 32        For the reasons set forth above, we find that the State had the authority to file the petitions

for pretrial detention at issue in the instant case and that the circuit court properly granted the

petitions.

¶ 33        Affirmed.